The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. W L Motor Lines, Inc. was a self-insured employer.
4. On 20 September 1994 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
5. Defendant paid compensation to plaintiff from 28 September 1994 through 15 February 1995 at the rate of $333.35 per week.
6. The following items were stipulated into evidence:
 a. A packet of stipulated documents with an index.
 b. Nineteen pages of computer records regarding payments made.
c. Twelve pages of various documents.
* * * * * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. In September 1994 plaintiff and her husband were employed by defendant as truck drivers. Mr. Lambert owned the truck and they drove it as a team for the company. They were paid a percentage of the revenue for the loads they transported, and from the money they received they paid for the truck, fuel, tolls, insurance, repairs and maintenance on the truck and other similar expenses. The net proceeds were essentially split between plaintiff and her husband.
2. On 20 September 1994 plaintiff sustained a compensable injury by accident when a stack of boxes containing frozen meat fell over, striking her and knocking her to the floor of the truck. Her back landed against a raised metal seam on the floor. As a result of the accident, the plaintiff sustained multiple contusions and experienced back and neck pain. After initial treatment in the emergency room, plaintiff was treated by Dr. Abrams, her family doctor in Arkansas. Dr. Abrams diagnosed the plaintiff's condition as a lumbar and cervical strain with severe contusions, and he treated her conservatively with medication and physical therapy. Dr. Abrams also ordered an MRI which only revealed an insignificant disk protrusion at the L5-S1 interspace.
3. Dr. Abrams referred plaintiff to Dr. Rooney, an orthopedic surgeon, for evaluation and Dr. Rooney examined the plaintiff on 14 November 1994. There were minimal findings on that date except for a slightly positive straight leg raising test, and Dr. Rooney found nothing to indicate that the plaintiff was unable to work. However, the plaintiff told Dr. Rooney that she had problems sitting, so he gave her a back brace and exercises. Dr. Rooney expected the plaintiff to have a full recovery. The plaintiff saw Dr. Abrams the next day and he prescribed physical therapy and medication. Although the plaintiff started undergoing the therapy after that appointment, she stopped therapy before her next appointment with Dr. Abrams.
4. On 13 December 1994 Dr. Abrams referred plaintiff to Dr. Verma since the plaintiff was still reporting problems. Dr. Verma examined the plaintiff on 14 December 1994 and recommended work hardening program and indicated that the plaintiff could return to light duty work with no sitting for more than two hours at a time. However, on 13 January 1995 Dr. Abrams kept the plaintiff out of work, presumably so that she could undergo the work hardening program which had been recommended.
5. Defendant admitted liability for benefits under the Workers' Compensation Act even though no Form 21 agreement was ever submitted to the Commission for approval. There was a dispute as to her average weekly wage, but defendant paid compensation to plaintiff for temporary total disability based upon an assumed wage of $500.00. In January 1995 defendant asked for a rehabilitation consultant to be assigned to the case. Consequently, Pat Moneyhon was contacted. She met with plaintiff and decided to refer plaintiff to a physiatrist in view of the persistent complaints. Consequently, on 1 February 1995 plaintiff began seeing Dr. Safman. Dr. Safman also recommended work hardening so Ms. Moneyhon began to make arrangements for such a program.
6. Plaintiff started work hardening on 16 February 1995 but on the second day informed the facility that she would be in Minnesota the next week for a deposition so she could not attend therapy that week. This was of some concern to the doctor and the therapist since it was important to have continuity in the program which involved a gradual buildup of strength and stamina. The claims adjuster then refused to pay compensation for the mileage to the rehabilitation facility which was approximately forty-three miles away from plaintiff's home. After returning from Minnesota, plaintiff attended therapy for two weeks. The plaintiff stopped attending therapy claiming that she did not have the funds to continue driving that distance.
7. Dr. Safman examined plaintiff on 27 February 1995 and 13 March 1995. At the latter appointment, there were no objective findings and Dr. Safman indicated that when plaintiff completed the work hardening program she would be at maximum medical improvement. Plaintiff did not return to the work hardening program thereafter and did not keep her next appointment with him. By 11 April 1995, Dr. Safman viewed some surveillance tapes which he found showed plaintiff engaged in activities which were inconsistent with the symptoms she had described to him. Dr. Safman had previously wondered about her ability to ride as far as Minnesota and about some inconsistencies on her prior examinations. Consequently, Dr. Safman then released her to return to work and discharged her from his care with no permanent partial impairment.
8. Plaintiff returned to Dr. Abrams on 18 May 1995 with continued complaints. On 27 June 1995 Dr. Abrams advised her to try to return to work, but she apparently made no effort to return until after her next appointment with him on 4 August 1995 when he specified that plaintiff could drive the truck but not lift more than thirty pounds. It was approximately 21 September 1995 when she resumed driving the truck for defendant, and plaintiff continued driving until the date of hearing.
9. The initial issue raised by the parties was the matter of plaintiff's average weekly wage. Defendant paid all sums to Mr. Lambert and was not privy to the information regarding the expenses of driving the truck. Those expenses were considerable and were within the sole knowledge of plaintiff and her husband. However, plaintiff produced no records to show what the expenses were. Plaintiff simply stated that she and her husband netted approximately $1500.00 per week, a figure Mr. Terry of the trucking company found to be incredible in view of the expenses involved. Consequently, plaintiff was directed to produce her income tax records. However, plaintiff was unable to provide those records because apparently she and her husband had not filed a tax return for the year in question.
10. In view of the circumstances, plaintiff's testimony regarding her average weekly wage was not credible. Her average weekly wage was approximately $345.00 based upon the most accurate evidence of record.
11. The next issue raised in the case was that of temporary total disability. Defendant stopped payment of compensation on 16 February 1995 without permission of the Industrial Commission on the basis that plaintiff had been evasive with the rehabilitation nurse and had stopped the work hardening program in order to leave the state for a week. However, plaintiff did try to resume the program when she returned from Minnesota but had financial difficulties due to the loss of compensation plus the fact that defendant was refusing to pay for her travel mileage to and from the rehabilitation facility. Plaintiff had to make an eighty-six mile round trip to attend work hardening sessions. Ms. Moneyhon tried to convince the adjuster to make the payment but the adjuster refused. Consequently, plaintiff could not afford to continue with the program.
12. Defendant also was not reimbursing plaintiff for the mileage to see Dr. Safman, which involved a trip of over one hundred miles. However, plaintiff went to Dr. Safman's office for the 13 March 1995 appointment. There were no objective findings on Dr. Safman's examination that day and he advised plaintiff that he would be releasing her once she completed the work hardening program. Plaintiff did not keep her next appointment with him on 27 March 1995. It was after that appointment that Dr. Safman learned that her condition was not as severe as she had led him to believe, so he discharged plaintiff from medical care.
13. As a result of the injury by accident giving rise to this claim, plaintiff was unable to work and earn wages from 23 September 1994 through 11 April 1995. By March 1995 she was misrepresenting the severity of her symptoms. As of 12 April 1995 plaintiff was capable of performing her job with defendant, except for some of the heavier lifting required, and defendant had offered work to her which was within her capacity to perform.
14. Plaintiff reached maximum medical improvement on 11 April 1995 and sustained no permanent partial disability as a result of this injury. Although she was later seen by Dr. Habashi who thought that she did have some permanent impairment, his findings were inconsistent with those of the treating physicians and were based upon the assumption that her complaints were accurate.
* * * * * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage was $345.00 at the time of her injury on 20 September 1994. N.C. Gen. Stat. § 97-2(5);Anderson v. Northwestern Motor Company, 233 N.C. 372 (1951).
2. Plaintiff is entitled to compensation at the rate of $230.00 per week for 28 and 5/75 weeks for the temporary total disability she sustained as a result of this injury by accident. However, this compensation is subject to a credit for compensation previously paid. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-42.
3. Although defendant would ordinarily be liable for a penalty for compensation due after 15 February 1995 which was not paid, defendant has overpaid compensation for temporary total disability because of the discrepancy between the estimated and the actual average weekly wage. Defendant is therefore not liable for any additional temporary total disability compensation and there is no compensation against which to assess a penalty. N.C. Gen. Stat. § 97-18; Rule 404, Workers' Compensation Rules of the North Carolina Industrial Commission.
4. Plaintiff is not entitled to compensation for permanent partial disability having sustained no such disability as a result of her compensable injury. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident, including reimbursement for travel mileage for doctor's appointments and work hardening. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. In that the defendant has overpaid compensation to plaintiff no additional compensation is awarded and defendant is entitled to a credit in the amount of the overpaid compensation against any compensation found to be due in the future and against travel reimbursement amounts due to plaintiff.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including expenses for travel mileage as allowed by the North Carolina Industrial Commission fee schedule, but subject to the provisions of paragraph one.
3. Defendant shall pay the costs.
This is the 6th of March 1997.
 S/ _______________________ DIANE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ COY M. VANCE COMMISSIONER
DCS:jmf